UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JACK L. HUDDLESTON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09-cv-594-JPG |
| | ) | |
| ILLINOIS CENTRAL RAILROAD COMPANY, a corporation, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Court's order to show cause why this case should not be transferred to the United States District Court for the Central District of Illinois (Doc. 8) and the motion of defendant Illinois Central Railroad Company ("Illinois Central") to transfer this case to the United States District Court for the Central District of Illinois pursuant to 28 U.S.C. § 1404(a) (Doc. 13). Sensibly, the parties have effectively merged the briefing on these two matters. Plaintiff Jack L. Huddleston, Jr., has responded to the show cause order and Illinois Central's motion to transfer (Docs. 17 & 18), and Illinois Central has replied to Huddleston's response (Docs. 23 & 24).

**I.    Background**[1]

Huddleston brought this case in the Southern District of Illinois under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, and the Locomotive Boiler Inspection Act, 49 U.S.C. § 20701. Huddleston worked for Illinois Central from 1975 to 2009. For most of his career, he was based in Urbana, Illinois, in the Central District, and lived – and continues to live – nearby. At some point, he was based in Decatur, Illinois, also in the Central District. Some of his positions required stationary work on Illinois Central's facilities and equipment within the

---

[1] The Court notes that the parties have attached voluminous evidence to which it does not cite with specificity in its briefing. It is the parties' job to point the Court to the relevant evidence; the Court will not scour the record in search of evidence to support or to oppose a motion. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). Accordingly, to the extent the evidence is not cited in the relevant briefing, the Court has disregarded it.

Central District and some required him to travel on a train both within the Central District and outside the Central District into the Southern District and Kentucky.

In this case, Huddleston seeks compensation for injuries he suffered in two discrete incidents that occurred while he was working as a locomotive engineer for Illinois Central. The first incident occurred when fifteen to twenty cars were shoved into his train on August 6, 2006, in Champaign, Illinois. The second incident occurred when Huddleston's locomotive cab seat fell apart and malfunctioned on August 28, 2008, in Rantoul, Illinois. Huddleston did not seek immediate medical treatment for injuries from those incidents. Champaign and Rantoul are both in the Central District of Illinois.

Huddleston also seeks compensation for cumulative trauma injuries he suffered from exposure to repetitive movements, vibrations, jolts and slacks while traveling in Illinois and Kentucky over his career with Illinois Central. Specifically, Huddleston made a number of trips from the Champaign area, where his employment was based, to Centralia, Illinois, and Bluford, Illinois, both of which are in the Southern District. He also made a number of trips to Fulton, Kentucky, which required traversing the Southern District. Based on Huddleston's own affidavit and records of his train travel, it appears that less than half of his total train travel miles were within the Southern District. The vast majority of his work, whether in a train yard, working on train tracks or traveling on a train, occurred in the Central District.

Over his career with Illinois Central, Huddleston was seen by physicians in the Champaign area, including Dr. David Fletcher, who declined to allow him to return to work in July 2009. Beginning in May 2009, Huddleston started seeing Dr. Matthew Gornet, a disc replacement surgeon in Chesterfield, Missouri. Huddleston also sought a second surgical opinion from Dr. George Schoedinger, III, a surgeon in St. Louis, Missouri, and Swansea, Illinois. Swansea is within the Southern District.

Many of the witnesses expected to be called in this case, including Huddleston and his family, witnesses to the two discrete incidents and their aftermath, the defendant's risk

management investigator, and the doctors who observed Huddleston over his career, are in the Central District. Huddleston's direct supervisors who actually had contact with him and his daily coworkers are in the Central District, although the supervisors who had jurisdiction over him while he was traveling in Southern Illinois are in the Southern District. Additionally, some of his more senior Illinois Central supervisors are in Kentucky and Tennessee, which are closer to the Southern District than the Central District of Illinois. Other witnesses, including those familiar with the condition of tracks, trains and other equipment within the Southern District, with the collective bargaining agreement governing Huddleston's' employment and with safety complaints to Illinois Central, are in the Southern District or in Tennessee.

The Court has questions about whether this case ought to be tried in the Southern District of Illinois in light of the fact that the two discrete incidents involved in this case took place in the Central District of Illinois and it was unclear the magnitude of the Southern District's connection to Huddleston's cumulative trauma claim. Illinois Central believes the case belongs in the Central District and accordingly filed the pending motion to transfer venue for the convenience of the parties and witnesses and in the interest of justice. Huddleston maintains that a transfer of venue is not warranted.

## II.     Transfer Standards

Illinois Central does not contest that venue is proper in the Southern District of Illinois under 28 U.S.C. § 1391 or 45 U.S.C. § 56 and therefore does not seek a change of venue pursuant to 28 U.S.C. § 1406, which governs transfer or dismissal when venue is improper. *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964). Indeed, Illinois Central is an Illinois corporation with its headquarters in the Northern District of Illinois and business operations in the Southern District of Illinois. Therefore, under 28 U.S.C. § 1391(c), it is deemed to be a resident of, among other districts, the Southern District of Illinois and is subject to venue here.[2]

---

[2]Venue is also proper in the Central District of Illinois where Illinois Central has substantial business operations.

Instead, Illinois Central relies exclusively on 28 U.S.C. § 1404(a), under which a district court may transfer a civil action to any other district where the action might have been brought originally "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The decision to transfer a case is left to the discretion of the district court. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen*, 376 U.S. at 622; *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986); *see Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

In deciding a § 1404(a) motion to transfer, the Court should consider a number of case-specific factors such as the convenience of the potential transferee forum to the parties and witnesses and the interests of justice in general. *Stewart*, 487 U.S. at 29-30; *see Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) (citing *Van Dusen*, 376 U.S. at 622). "The movant . . . has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient," *Coffey*, 796 F.2d at 219-20, and the Court must give some weight in favor of the forum in which the plaintiff chose to file the complaint, *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Macedo v. Boeing Co.*, 693 F.2d 683, 688 (7th Cir. 1982).

Courts frequently consider specific factors such as the plaintiff's choice of forum, the location of the relevant events, documents and evidence, the convenience to the witnesses and parties, the relation of the controversy to the forum, the court's familiarity with the applicable law and the speed with which a case can be tried. *Methode Elecs., Inc. v. Delphi Auto. Sys. LLC*, 639 F. Supp. 2d 903, 907 (N.D. Ill. 2009). Even if the circumstances indicate that a transfer would be clearly more convenient to the parties and witnesses, a court may still refuse to transfer the case if it is not in the interest of justice. *Coffey*, 796 F.2d at 220; *Van Dusen*, 376 U.S. at 625. "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system," including where the litigants are more likely to receive a speedy trial. *Coffey*, 796 F.2d at 221.

**III.    Analysis**

In light of the particular circumstances of this case, the Court finds that Illinois Central has met its burden of showing that the Central District of Illinois is clearly more convenient than the Southern District of Illinois and that a transfer of venue to the Central District is in the interest of justice.

  A.  <u>Plaintiff's Chosen Forum</u>

The plaintiff has chosen to file this lawsuit in the Southern District of Illinois. Ordinarily the Court should give this factor substantial weight and should rarely transfer a case from the plaintiff's selected forum. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003). However, the importance of the plaintiff's choice of forum is reduced when the plaintiff does not live in the forum, few relevant events occurred in the forum and other factors weigh heavily in favor of a transfer.

Here, Huddleston and his family reside in Monticello, Illinois, in the Central District of Illinois, which is only a short distance from the courthouse in Urbana, Illinois, where this case is likely to be tried if it is transferred. In contrast, Monticello is approximately 172 miles from the Benton courthouse, where this Court sits. Thus, it will be vastly more convenient for Huddleston to litigate in the Central District than to litigate in Benton. Furthermore, the two discrete incidents involved in this lawsuit occurred in the Central District, and a relatively small portion of Huddleston's work for Illinois Central and train travel giving rise to his cumulative trauma claim occurred in Southern District. Although there is some connection between this lawsuit and the Southern District, as discussed below, in light of the fact that Huddleston does not reside in the Southern District, the two discrete incidents in issue have no connection to the Southern District, and the cumulative trauma claim is not strongly related to the Southern District, the Court gives only moderate weight to Huddleston's choice of forum.

  B.  <u>Convenience to the Witnesses</u>

It is clear that trial in the Central District is more convenient than trial in the Southern

District to the witnesses having the most relevant testimony.

As for the fact witnesses to the August 2008 incident, the vase majority of the important witnesses reside in the Central District: an eye-witness to the incident (Jeremy Griffin), those to whom the events were immediately reported (Ran Pancoast, Mike Monsour), the post-event investigator (Kelly Clough), the person who repaired the malfunctioning seat (Rodney Wiegel) and Huddleston's direct supervisor (Chris Handley). Huddleston does not argue otherwise. Those witnesses will offer important testimony, and their convenience should be given great weight. Trial in the Central District would clearly be more convenient for them than trial in the Southern District.

Likewise, the two eye- witnesses to the August 2006 incident also reside in the Central District: the conductor (Rodney Flessner) and the brakeman/switchman (Craig Kauajacz) at the time of the train collision. Again, the convenience to the eye-witnesses should be given great weight. The other two witnesses are in Kentucky and Mississippi. It may be a greater burden for those witnesses to travel to the Central District than to the Southern District.

Huddleston proposes to call a union chairman from Tennessee (John Koonce) to testify about the collective bargaining agreement governing his employment. While this may be important information to determine damages should Huddleston prevail, such testimony is also likely available from Huddleston's local union representative or from documentary evidence. It is unclear why the union chairman's testimony is necessary. Thus, the Court affords his convenience little weight.

Huddleston has also named a number of other individuals from the Southern District[3], Kentucky or Tennessee who he may call to testify. Many of those individuals will be offered to testify about the conditions of trains or tracks in Southern Illinois. It is reasonable to assume that

---

[3]Huddleston has attached an affidavit from a union representative (Mark Whitchurch) stating that his traveling to Kentucky for trial would be inconvenient but that his traveling to St. Clair County, Illinois, for trial would not. The Court disregards that affidavit as neither Kentucky nor St. Clair County is a possible venue for this trial.

there would be an equivalent number of witnesses from the Central District who are able to testify about the same matters in Central Illinois, where Huddleston experienced the most train travel.  The convenience to those witnesses is a wash.  Furthermore, Huddleston has not explained how his witnesses' testimony is important to his particular claim or, if it is important to his claim, how it would not be cumulative of other witnesses' testimony or documentary evidence.  For these reasons, the Court gives minimal weight to the convenience of those Southern District, Kentucky or Tennessee witnesses.  The convenience to those witnesses does not outweigh the clear convenience to numerous other more important witnesses of holding the trial in the Central District.

As for the medical witnesses, those who are best able to testify about the progression of any cumulative trauma injury over Huddleston's lengthy career are those who have examined him over that time and who are located in the Central District.  Testifying in the Central District instead of the Southern District would clearly be more convenient to the witnesses to Huddleston's medical condition throughout his career.  However, as for the two surgeons Huddleston has seen in Missouri just outside the Southern District of Illinois, it is likely to be more convenient for those doctors to testify in the Southern District than in the Central District.  With respect to the medical witnesses, the convenience factor appears to be a wash and is rendered somewhat less important by the fact that medical witness testimony is often presented by video deposition and does not require personal appearance at trial.

As for the location of the documentary evidence, considering the pervasive use and availability of electronic records and methods of transmission, this factor weighs in favor of neither district.

Weighing the foregoing, the Court finds that it is clearly more convenient for the parties and the most important witnesses for this case to be heard in the Central District despite Huddleston's decision to file the case in the Southern District.

C.     Interest of Justice

The interest of justice does not warrant a contrary decision.  Huddleston argues that he will receive a speedier trial in the Southern District and cites a Federal Court management statistical report showing the median time from civil case filing to trial in 2008 was four months shorter in this district (29 months) than in the Central District (33 months).  U.S. District Court – Judicial Caseload Profile,  http://www.uscourts.gov/cgi-bin/cmsd2008.pl (2009).  However, the 2008 statistics showing the median time from civil case filing *to disposition* (which includes civil cases not resolved by trial) is virtually a tie between the Southern District (9.4 months) and the Central District (9.3 months).  Furthermore, in light of the variations from year to year in the historic median times to disposition or trial – the Southern District and the Central District have flip-flopped numerous times since 2003 as to which is speedier with respect to each statistic – the Court is hesitant to place much value on a single year's statistics.  For these reasons, the Court finds that neither district is likely to provide Huddleston a significantly speedier resolution of his case than the other district.

In any case, the Court believes the difference in median time from complaint to disposition or trial is not a very reliable indicator of how long this *particular* case will take to try and, even if it were, does not justify keeping the case in this district in light of all the other circumstances favoring a transfer to the Central District.

The Court is further mindful that the United States District Court for the Central District of Illinois has a strong interest in resolving cases involving plaintiffs who reside and injuries that occur in that district.  This interest is greater than this Court's interest in resolving cases involving defendants who conduct business in Illinois and injuries that occur only partly in this district.

Other relevant factors such as a court's familiarity with the relevant law – federal statutes litigated frequently in both districts – favor neither district.

In sum, the interests of justice do not weigh in favor of keeping this case in the Southern

District and do not overcome the clear convenience of litigating this case in the Central District.

## IV.     Conclusion

For these reasons, the Court finds that the convenience of the witnesses and the parties and the interest of justice favor litigating this action in the Central District of Illinois. Accordingly, the Court **GRANTS** Illinois Central's motion to transfer (Doc. 13) and **TRANSFERS** this case pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Central District of Illinois.  The Court's September 10, 2009, order to show cause (Doc. 8) is **DISCHARGED**.

**IT IS SO ORDERED.**
**DATED:  January 5, 2010**

                                                s/ J. Phil Gilbert
                                              **DISTRICT JUDGE**